FILED
Clerk
District Court
JUL 13 2018
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KIM, DONG-YOUL and MOON, HEE KO,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC INDEMNITY INSURANCE COMPANY,<br><br>Defendant. | Case No.: 17-cv-00018<br><br>**DECISION AND ORDER DENYING PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiffs Dong-Youl Kim and Hee Ko Moon have filed a complaint against their automobile insurance company, Defendant Pacific Indemnity Insurance Company, seeking relief for Defendant's failure to pay the liability limit of the insurance policy, and refusal to indemnify or defend it against a wrongful death lawsuit. (Compl., ECF No. 1-2.) Before the Court is Plaintiffs' second motion for partial summary judgment regarding the proper party for settlement. (ECF No. 21.) The Court heard argument on June 7, 2018, and again on June 28, 2018.[1]

For the reasons discussed below, Plaintiffs' second motion for partial summary judgment is DENIED.

---

[1] The Court requested supplemental briefing as to whether the Commonwealth's direct action statute, 4 CMC § 7502(e), applied to the dispute. (ECF No. 43.) As stated during the June 28, 2018, hearing, the Court agrees with the parties that the direct action statute does not alter which individuals can bring a wrongful death action against an insurance company and therefore does not resolve the legal question presented by the parties in this motion.

## I. BACKGROUND

The factual background giving rise to this lawsuit has been recounted in detail in the Decision & Order on Plaintiff's First Motion for Partial Summary Judgment and Motion to Strike. (ECF No. 44.) Only those facts relevant to this motion will be recounted here.

Following the accident that led to Jefferson's Keju's death, Plaintiffs' son, through his legal counsel, contacted Defendant's agent AIUP to demand that it "pay the policy limit of $15,000 to the family of Jefferson Keju." (Feb. 22, 2013 Berger Ltr., Ex. 2, Finona Decl., ECF No. 28 at 31.) PIIC responded to Plaintiffs and their son that it had not yet received any claims against their policy, and were in contact with their attorney, Mr. Joshua Berger. (Mar. 12, 2013 PIIC Ltr., Ex. 6, Finona Decl. at 39.) Mr. Keju's mother, Ms. Apolonia Joseph, through her counsel, subsequently contacted Defendant to file a Third Party Claim form, stating the basis of the claim was wrongful death. (June 17, 2013 Nutting Ltr. and Claim Form, Ex. 8, Finona Decl. at 44–45.) In response, Defendant inquired as to whether Ms. Joseph was the "legally appointed executor and/or administrator of the decedent's estate" and requested the appropriate documentation to process the claim. (June 24, 2013 Ltr., Ex. 9, Finona Decl. at 47.)

Ms. Joseph then filed a Petition for Letters of Administration to "probate the estate of the decedent," stating there was "no real and personal property of the estate except for an insurance claim with Pacific Indemnity Insurance Company of Guam." (Petition, Ex. 11, Finona Decl. at 60–62.) The Commonwealth Superior Court granted the Petition, appointing Ms. Joseph as Administratrix of Mr. Keju's Estate so that she could, among other things, "[p]ursue the insurance claim for the decedent with Pacific Indemnity Insurance Company of Guam." (Order Granting Petition, Ex. 11, Finona Decl.

at 56–57.)

After Ms. Joseph was appointed Administratrix, Defendant offered "the policy limits of $15,000.00" to settle the claim and provided a Release of Claims agreement. (Nov. 15, 2013 Ltr., Ex. 12, Finona Decl. 65.) On February 27, 2014, in exchange for the $15,000 payment to "Estate of Jefferson Kiauol Keju," Ms. Joseph signed the Release of Claims as the Administratrix wherein she agreed to release Dong-Youl Kim, He Ko Moon, Woo Hyun Kim, and Pacific Indemnity Insurance Company from "any and all actions causes of action, claims, demands, damages, costs, loss of service, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about the 1st day of January 2013, at or near Garapan, Saipan-CNMI." (Release of Claims, Ex. 22, Finona Decl. at 91.) PIIC provided a copy of the Release to Plaintiffs' attorney, who acknowledged receipt and responded that he would "pass it on to the clients." (*Id*. at 92.) The $15,000 was paid to the law office of Ms. Joseph's counsel and deposited in the client trust account. (Nutting Decl. ¶ 6, ECF No. 46-2.) The next day, on February 28, 2014, the amount was paid to Ms. Joseph, minus an advance given to her and legal fees owed to counsel. (*Id*. ¶ 7, Check, ECF No. 46-2 at 6.) Ms. Joseph's attorney, Stephen Nutting, declares that he represented her for the purpose of "a wrongful death claim she had as a result of Joseph's [sic] death in an automobile-pedestrian accident." (Nutting Decl. ¶ 2, ECF No. 46-2.)

Eight months later, Ms. Joseph, through a new attorney, filed a wrongful death lawsuit against Plaintiffs, and Plaintiffs informed Defendant of the lawsuit. (Ex. 1 to Civille Decl., ECF No. 30 at 5–9.) She filed an amended complaint on December 29, 2015, stating she was filing as "personal

3

representative of Jefferson Keju." (Ex. 2 to Civille Decl., ECF No. 30 at 11–16.)

Thereafter, Mr. James Rayphand gave notice in the wrongful death suit that he would be substituted as personal representative for Jefferson Keju. (*See* Notice of Substitution, ECF No. 30 at 21–22; Stip. Entry of Judgment, ECF No. 30 at 18–19.) There's no evidence that Ms. Joseph had the probate court's approval to substitute out, or to have Mr. Rayphand substitute in. Nevertheless, Plaintiffs, proceeding pro se, ultimately agreed to a stipulated judgment of $300,000 with Mr. Rayphand in exchange for a covenant not to sue. (Stip. Entry of Judgment, Ex. 3, Civille Decl., ECF No. 30 at 18–19.) This lawsuit ensued a year later.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment only if "there is no genuine issue of material fact" and the record shows that the moving party "is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the parts of the record that "demonstrate the absence of a genuine issue of material fact." *Id*. at 323. If that initial burden is met, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and therefore must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In considering the evidence submitted by the parties, the court views the facts in the light most favorable to the nonmoving party. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).

4

### III. DISCUSSION

Plaintiffs seek a judgment from the Court that Defendant settled with the wrong party when it negotiated the $15,000 settlement and release of claims. (Mem. in Supp., ECF No. 21-1.) They contend that Ms. Joseph was the personal representative for the Estate of Jefferson Keju, but was not appointed as personal representative to pursue the wrongful death claim. (*See generally id*.) Defendant contends that there is no legal distinction between a personal representative for probate and one for wrongful death. (Resp. Br., ECF No. 27.) This Court agrees that there is no legal distinction to the extent that there is no legal requirement for an individual who is appointed as personal representative of an estate to separately obtain authorization to pursue a wrongful death claim.

In the CNMI, wrongful death actions must be "brought in the name of the personal representative of the deceased, but shall be for the exclusive benefit of the surviving spouse, the children and other next of kin, if any, of the decedent as the court may direct." 7 CMC § 2102. The "personal representative . . . may, with the consent of the court, settle with the defendant the amount to be paid at any time before or after the commencement of the suit." 7 CMC § 2103(b). The term "personal representative" is undefined in the wrongful death statute. However, under the probate code, a personal representative is defined as including the "executor, executrix, administrator, administratrix, successor, personal representative, and persons who perform substantially the same function." 8 CMC § 2107(u). Further, a wrongful death claim in the CNMI does not contain a survivorship component, and therefore a personal representative may not recover for the decedent's injuries, but only for the injuries suffered by the statutorily-named next of kin. *Indalecio v. Yarofalir*, 2006 MP 18 ¶¶ 20, 22.

Plaintiffs contend that because the way in which the funds from a wrongful death claim are distributed is different from how the funds in a probate action are distributed, an individual who is appointed as personal representative for an estate is necessarily different from an individual who may serve as personal representative for a wrongful death claim. (Mem. in Supp. 4–5.) There is no dispute that a wrongful death claim does not belong to the estate and therefore is not distributed through probate. This does not, however, require the conclusion that an individual appointed as personal representative by the probate court must separately be appointed as personal representative to pursue a wrongful death claim. Although there may be some appeal to this conclusion given the different roles of a personal representative for each type of claim, there is no authority in the CNMI to indicate that an individual appointed as personal representative for an estate must separately or expressly also be authorized to pursue a wrongful death claim. Plaintiffs have offered no statutes, regulations, or cases that suggests otherwise.

To the contrary, persuasive authority suggests that "personal representative" in the context of a wrongful death claim is, at the very least, inclusive of executors and administrators of estates.[2] The CNMI's wrongful death statute is modeled on Lord Campbell's Act, which is the basis of many other states' wrongful death acts as well. *Indalecio*, 2006 MP ¶ 13. Lord Campbell's Act of 1848, instead of using the phrase "personal representative," indicated that any lawsuit must be brought "by and in the Name of the Executor or Administrator of the Person Deceased." *Id*. n.3. Given the change from

---

[2] The Court need not and does not decide whether "personal representative" under the CNMI's wrongful death statute includes more than executors and administrators.

"executor or administrator" to "personal representative," a number of states have concluded that the phrase "personal representative" means, at a minimum, an executor or administrator of the estate. *See, e.g.*, *Ramsey v. Neiman*, 634 N.E.2d 211, 212 (Ohio 1994) (holding that "personal representative" in the latter part of the 19th century meant executor or administrator); *Chavez v. Regents of Univ. of N.M.*, 711 P.2d 883, 886 (N.M. 1985) (holding personal representative means executor or administrator, including those who are not granted full authority under probate with regards to the estate); *Hatas v. Partin*, 175 So.2d 759, 761 (Ala. 1965) (holding that, despite the different roles of a personal representative in wrongful death suit and in probate, "personal representative" in wrongful death suit meant executor or administrator of the estate). This Court agrees, and holds that, under CNMI law, the personal representative for a wrongful death action refers, at a minimum, to the administrator or executor of an estate. Further, given that there is no procedural mechanism for appointing a personal representative outside of probate, the Court finds that an individual appointed as administrator or executor for an estate need not separately or expressly be appointed as personal representative for a wrongful death claim.

The Court now turns to the facts. In this case, it is undisputed that Ms. Joseph was properly appointed as the Administratrix of the Estate of her son. Plaintiffs argue that the appointment order did not specify that she was appointed as personal representative in a wrongful death claim, and so her claim was brought on behalf of the decedent as part of the Estate, given the language in the probate court's order. However, as set forth above, there is no legal authority in the CNMI to support the claim that Ms. Joseph was required to separately or expressly be appointed as personal representative to pursue a wrongful death claim once she was granted authority as Administratrix.

Additionally, it does not appear that the parties dispute that Ms. Joseph intended to pursue the insurance claim as a wrongful death claim. As described above, Ms. Joseph, through her initial counsel, stated on the third party claim form that she submitted to PIIC that she sought to bring a wrongful death claim. (Third Party Claim Form, Ex. 8, Finona Decl., ECF No. 28 at 45.) Her attorney, Mr. Nutting, confirms this intent, stating that he "submitted a written wrongful death claim to Pacific Indemnity" on her behalf. (Nutting Decl. ¶ 3, ECF No. 46-2.) The Administratrix and the Defendant subsequently "reached an agreement to settle [Mr. Nutting's] client's wrongful death claim for policy limits of $15,000." (Nutting Decl. ¶ 5.) The funds were remitted to Mr. Nutting's law office, and then paid from the client trust account to Ms. Joseph.

These facts undisputably demonstrate that Ms. Joseph, her attorney, and Plaintiffs understood Ms. Joseph's intent was to pursue a wrongful death claim. Based on the above analysis, and the fact that Plaintiffs do not identify any legal authority to suggest (1) that the Administratrix cannot be the personal representative of a decedent in a wrongful death claim or (2) that there is a legal requirement for the Superior Court to expressly state in appointing an Administratrix for an estate that said Administratrix is also appointed for purposes of a wrongful death action, there is no dispute of material fact that Ms. Joseph was the proper party-in-interest to settle with PIIC. Plaintiff's motion for partial summary judgment is denied.

//

/

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' second motion for partial summary judgment re: proper party for settlement with Defendant (ECF No. 21) is DENIED.

IT IS SO ORDERED.

Dated this 13th day of July, 2018.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge